NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0392n.06
Nos. 15-3641, 15-3697, 15-3753

FILED
Jul 12, 2016
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DARDISI ALEXANDER (15-3641); JOSE | ) | COURT FOR THE |
| MAGUEYAL (15-3697); TERRANCE WHARTON | ) | NORTHERN DISTRICT OF |
| (15-3753), | ) | OHIO |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE:    CLAY, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  Dardisi Alexander, Jose Magueyal, and Terrance Wharton each pled guilty to participating in the same cocaine distribution conspiracy.  Alexander was sentenced to 96 months' imprisonment, Magueyal to 63 months, and Wharton to 48 months. They now individually appeal their sentences.  Alexander argues that his attorney was constitutionally ineffective during sentencing, Magueyal claims that the district court improperly varied his sentence upwards after granting a departure for substantial assistance pursuant to 18 U.S.C. § 3553(e), and Wharton contends that his above-Guidelines sentence is substantively unreasonable.  Their arguments lack merit for the reasons that follow.

Nos. 15-3641, 15-3697, 15-3753, *United States v. Alexander, et al.*

I. Alexander

Alexander argues that his counsel was ineffective for failing to object to an error in the calculation of his criminal history category.[1]  Alexander's presentence investigation report concluded that Alexander should be assessed eleven criminal history points, resulting in a criminal history category of V.  Alexander's counsel successfully objected to the assessment of one criminal history point for a disorderly conduct charge, bringing Alexander's total criminal history points to ten and leaving his criminal history category at V.  Combining his criminal history category of V with his total offense level of 23 yielded an applicable Guidelines range of 84–105 months.  Alexander was sentenced to a midrange term of 96 months.

Alexander's appeal concerns the assessment of a criminal history point for a violation of Canton Municipal Code § 513.03, which is entitled "presence in place or premises where designated controlled substances used."  His counsel objected to this assessment on the ground that it was a "minor misdemeanor" that carries no jail time, but did not object on the ground that U.S.S.G. § 4A1.2(c)(2) provides that local-ordinance violations are not counted in assessing criminal history points.  Alexander argues that his counsel's failure to object on the ground that § 4A1.2(c)(2) excludes local-ordinance violations from criminal-history scores constituted ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).  Had his counsel objected on the proper grounds, Alexander argues, his criminal history score would have been nine and his criminal history category would have been IV.  With a criminal history score of IV, the applicable Guidelines range would have been 70–87 months, rather than the 84–105 month advisory range that led to Alexander's 96-month sentence.

---

[1] The appeal waiver in Alexander's plea agreement reserved his right to pursue claims of ineffective assistance of counsel on appeal or on collateral attack.

We decline to address Alexander's ineffective-assistance-of-counsel claim on this direct appeal. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)). While we will review an ineffective-assistance-of-counsel claim on direct appeal when "the record is adequately developed to allow the court to properly assess the merits of the issue," *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999), here there is no evidence in the record as to why Alexander's counsel decided not to argue that the Canton Municipal Code § 513.03 conviction should be excluded from Alexander's criminal history score as a local-ordinance violation. Without an evidentiary hearing, we have "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Therefore, because it is not possible at this time to determine whether Alexander's counsel provided constitutionally ineffective representation, we leave Alexander to develop a record and make these arguments in a 28 U.S.C. § 2255 claim.

We also decline the Government's invitation to decide Alexander's claim on direct appeal. The Government urges that we should decide Alexander's ineffective-assistance-of-counsel claim at this time because, the Government contends, Alexander's claim fails on the merits. We have previously addressed a defendant's ineffective-assistance-of-counsel claim on direct appeal when the trial record made clear that the defendant could not prevail in showing deficiency or prejudice. *See United States v. Johnson*, 765 F.3d 644, 648–49 (6th Cir. 2014); *Fortson*, 194 F.3d at 736; *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). In this case,

however, it is not clear on this record that Alexander's counsel was not deficient or that Alexander did not suffer prejudice.

Section 4A1.2(c)(2) prohibits counting violations of local ordinances in criminal history scores, but excepts "those violations that are also violations under state criminal law." The Government argues that Alexander's conviction for Canton Municipal Code § 513.03 may be counted under § 4A1.2(c)(2) because "§ 513.03 is the local equivalent of Ohio Rev[ised] Code § 2925.11." However, contrary to the Government's arguments, Ohio Revised Code § 2925.11 is arguably not identical to Canton Municipal Code § 513.03. Canton Municipal Code § 513.03 provides that:

> No person shall enter, visit or remain in or about any place or premises . . . where any controlled substance or illegal drug abuse instrument . . . is being unlawfully manufactured, sold, dispensed, furnished, given away, stored or used with knowledge that such activity is occurring and for the purpose of engaging in such illegal drug-related activity.

In contrast, Ohio Revised Code § 2925.11 makes it unlawful for any person to "knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Canton Municipal Code § 513.03 appears to criminalize more conduct than does Ohio Revised Code § 2925.11: An individual need not "obtain, possess, or use" a controlled substance in order for that individual to "enter, visit, or remain" in a place where illegal drug activity is occurring while having the purpose of engaging in such illegal drug activity. Thus, a violation of Canton Municipal Code § 513.03 may not necessarily constitute a violation of Ohio Revised Code § 2925.11. Accordingly, because it is not clear that failing to argue that U.S.S.G. § 4A1.2(c)(2) prohibited the use of Wharton's Canton Municipal Code § 513.03 conviction was not deficient and would not have resulted in prejudice, we do not resolve Alexander's ineffective-assistance-of-counsel claim at this time.

## II. Magueyal

Magueyal claims that the district court lacked authority to use § 3553(a) factors to sentence above a range calculated below a statutory mandatory minimum on the basis of substantial assistance.[2]   Originally, Magueyal faced a mandatory minimum sentence of 120 months for his involvement in the cocaine distribution conspiracy.  However, the Government, pursuant to 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1, and U.S.S.G. § 3E1.1, moved for a nine-level downward departure—six levels for substantial assistance and three levels for acceptance of responsibility.  Immediately after his arrest, Magueyal had met with law enforcement, admitted responsibility, provided law enforcement with information about persons involved in the conspiracy, offered to testify against co-defendants, and participated in controlled calls with co-defendants.  Despite a concern that "this is quite a dramatic reduction given . . . the scope and extent and the length of time the conspiracy has been up and running," the district court granted the Government's motion.  This brought Magueyal's total offense level to 21, which, when combined with his criminal history category of I, resulted in a Guidelines range of 37–46 months.

Subsequently, when deciding what sentence to impose, the district court considered factors under 18 U.S.C. § 3553(a).  The district court noted that Magueyal played an "extensive" role in the conspiracy and that "this conspiracy would not have operated and would not have taken place" without Magueyal.  Based on this, the district court concluded that the maximum sentence under Magueyal's departure-based Guidelines range did not "reflect the seriousness of the offense" and "is not sufficient" to constitute "just punishment" or "adequate deterrence to protect the public."  Accordingly, because the district court determined that there "should be

---

[2] The appeal waiver in Magueyal's plea agreement reserved his right to appeal any sentence that "exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines."   The Government does not rely upon this waiver.

significant consequences for [Magueyal's] criminal actions," the district court varied above the 46-month-maximum departure-based Guidelines sentence and imposed a 63-month sentence. Magueyal appeals, arguing that our precedent forbids a district court from considering § 3553(a) factors to vary above a Guidelines range when the district court, pursuant to § 3553(e), is sentencing the defendant below the otherwise-applicable mandatory minimum.

The district court did not err in using § 3553(a) factors to reduce the extent of its previously granted departure pursuant to § 3553(e), resulting in a sentence still well below the original mandatory minimum. It would perhaps have been conceptually clearer for the district court to have decided that the defendant's assistance was not worth the full departure requested by the Government, *see United States v. Grant*, 636 F.3d 803, 817 (6th Cir. 2011) (en banc). In any event, the effect of a reduction under § 3553(e) is to lower the "floor" under which the district court may not sentence the defendant; it does not affect the district court's ability to sentence a defendant above that floor. Without a § 3553(e) reduction, the applicable floor is the mandatory minimum imposed by statute—here, 120 months. The district court may impose a sentence above the mandatory minimum based on § 3553(a) factors, *see, e.g.*, *United States v. Vowell*, 516 F.3d 503, 512–13 (6th Cir. 2008), but lacks the authority to impose a sentence below it, *see, e.g.*, *United States v. Marshall*, 736 F.3d 492, 500–01 (6th Cir. 2013). Thus, had the Government not made a motion for a reduction under § 3553(e), the district court could have used § 3553(a) factors to sentence Magueyal to a term of imprisonment greater than 120 months (assuming it would have been reasonable to do so). The granting of a § 3553(e) reduction effectively lowered the applicable floor—here, to 37 months. Accordingly, after the district court granted the Government's § 3553(e) motion, it had discretion to use § 3553(a) factors to increase Magueyal's sentence above the newly established floor of 37 months.

Our conclusion also finds support in *Grant*. In *Grant*, we recognized that when considering the extent to which a sentence should be reduced for substantial assistance, a district court "might properly consider a sentence below a certain point inappropriate for a defendant convicted of a heinous crime, and thus value his cooperation less." 636 F.3d at 817; *see also* U.S.S.G. § 5K1.1(a)(1) (requiring the district court to evaluate "the significance and usefulness of the defendant's assistance"). That is essentially what the district court did here—the district court acknowledged that Magueyal provided substantial assistance to the Government by granting the § 3553(e) motion, but ultimately found that a sentence below 63 months was insufficient to adequately punish and deter Magueyal for his serious offense. *Grant* imagines that such an analysis would occur all at once while the district court is deciding whether to grant the Government's § 3553(e) motion, *see* 636 F.3d at 817, but that the district court in this case broke out his reasoning into discrete steps—first recognizing that Magueyal had provided substantial assistance by granting the Government's § 3553(e) motion, but then imposing an upward variance based on his belief that a sentence below 63 months would be inappropriate— rather than grouping the entire analysis at the § 3553(e) stage is merely a matter of semantics. Ultimately, *Grant* suggests that district courts may consider factors similar to those embodied in § 3553(a) to sentence the defendant to a prison term longer than that requested in the Government's § 3553(e) motion, which is what happened here. Therefore, the district court's consideration of the seriousness of Magueyal's crime as a justification for varying above the Guidelines range was not unreasonable.

Contrary to Magueyal's arguments, our precedent does not prohibit the district court's consideration of § 3553(a) factors in granting the higher sentence in this case. Our prior cases all involve attempts by district courts or defendants to use factors unrelated to substantial assistance

in order to depart further below the mandatory minimum and do not address attempts by district courts to vary above a Guidelines range that was set after a § 3553(e) reduction, making the instant case a matter of first impression. Our prior cases hold that when a district court departs below the mandatory minimum pursuant to § 3553(e), factors unrelated to the defendant's substantial assistance—such as § 3553(a) factors unrelated to the defendant's cooperation with the Government—may not be used to further reduce a defendant's sentence below the otherwise-applicable mandatory minimum. *See United States v. Williams*, 687 F.3d 283, 286 (6th Cir. 2012). These cases are based on the rationale that district courts must have specific authorization from Congress in order to impose a sentence below a mandatory minimum, and that the authorization that Congress did give to the district courts to sentence below the mandatory minimum is limited to factors relating to substantial assistance. *See id.* (citing *United States v. Hawn*, 446 F. App'x 793, 796–97 (6th Cir. 2012)); *Grant*, 636 F.3d at 812–14. In *Williams*, we relied specifically on our explanation in *Hawn* that "the district court only had the *limited authority to impose a sentence below the statutory minimum* to reflect Hawn's substantial assistance and *it exceeded that authority by varying further below the minimum* for reasons other than Hawn's substantial assistance." 687 F.3d at 286 (emphasis added) (quoting *Hawn*, 446 F. App'x at 797). The statutory *floor*, in other words, was the basis for precluding the use of § 3553(a) factors to vary in *Hawn* and *Williams*. That rationale—that district courts must have specific authorization from Congress to sentence a defendant below the mandatory minimum—is not applicable when, as is the case here, the district court was not reducing Magueyal's sentence for reasons beyond what could be supported by substantial assistance.

### III. Wharton

Wharton appeals his above-Guidelines sentence of 48 months' imprisonment as substantively unreasonable.[3] Wharton had a total offense level of seventeen and a criminal history category of III, resulting in a Guidelines range of 30–37 months' imprisonment. The district court varied eleven months upward primarily because Wharton had been previously convicted of a federal cocaine conspiracy charge and because the sentence resulting from that prior conviction—46 months' imprisonment and 3 years' supervised release—apparently did not deter him from again becoming involved in a cocaine distribution conspiracy. In the prior case, the district court had concluded that his criminal history category overrepresented the seriousness of his criminal history, so that Wharton received a break and was sentenced below the otherwise-applicable Guidelines range. While Wharton remained clean during his supervised release, he became involved in the instant cocaine conspiracy approximately one year after his supervised release ended. Given this history, the district court reasoned that a sentence above 37 months was warranted because Wharton "apparently, tragically, has not learned" from his prior imprisonment, where "46 months . . . appears to have been ineffective" in deterring him from reoffending. Wharton argues on appeal that the district court gave unreasonable weight to his prior conviction, did not provide sufficient reasoning for its upward variance, imposed a sentence that is disparate when compared to his co-defendants, and disregarded positive factors.

Wharton's arguments do not warrant reversal. First, the district court did not abuse its discretion in emphasizing Wharton's prior offense. Although "[a] sentence may be considered substantively unreasonable when the district court . . . gives an unreasonable amount of weight to any pertinent factor," *United States v. Conatser,* 514 F.3d 508, 520 (6th Cir. 2008), it is also true

---

[3] The appeal waiver in Wharton's plea agreement reserved his right to appeal any sentence that "exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines."

that "[a] district court may place great weight on one factor if such weight is warranted under the facts of the case," *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (citing *United States v. Zobel,* 696 F.3d 558, 571–72 (6th Cir. 2012)). Here, the weight that the district court placed on Wharton's prior conviction was warranted because Wharton committed the same type of offense as his prior conviction shortly after finishing the prior conviction's supervised release term. We have previously ruled that an above-Guidelines sentence was substantively reasonable when previous, shorter sentences failed to deter the defendant from committing the same type of offense. *United States v. Polihonki*, 543 F.3d 318, 325–26 (6th Cir. 2008). As in *Polihonki*, it was therefore not unreasonable for the district court in this case to impose an above-Guidelines sentence when a within-Guidelines sentence would have been lower than a sentence that has already been shown to be ineffective at deterring Wharton from becoming involved in cocaine distribution conspiracies. Further, the district court clearly explained its reasoning when it stated that "there must be a consequence" for "[i]ndividuals who put cocaine, addictive substances into our communities," especially for "those who continue to do so after having a prior conviction and having prior opportunities to modify their behavior." Thus, Wharton's argument that the district court did not provide sufficient reasoning for the upward variance also fails.

Second, because district courts are not required to consider sentence disparities with respect to co-defendants, *United States v. Walls*, 546 F.3d 728, 737 n.3 (6th Cir. 2008), Wharton's argument that the district court failed to compare his sentence to other co-defendants who received shorter sentences misses the mark. Moreover, the district court made clear that "any disparity is driven by the fact and circumstances and the history and characteristics of the defendant primarily and the fact that his prior federal conviction and sentence for a very similar related offense did not appear to have any deterrent effect." Accordingly, the disparity between

Wharton and his co-defendants is not unreasonable given the fact that Wharton's prior conviction made his circumstance quite different than the circumstances of his co-defendants.

Finally, to the extent that Wharton's argument that the district court disregarded positive factors "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently," his argument is beyond the scope of our appellate review. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). There is no evidence that the district court disregarded the positive factors Wharton cites—to the contrary, the district court specifically discussed Wharton's age, substance abuse history, educational and work history, good mental health, family, and living situation. While Wharton may not agree with it, the district court's conclusion that the positive factors did not outweigh the fact that a within-Guidelines sentence would not likely deter Wharton from reoffending was not an unreasonable balancing of the § 3553(a) factors. Therefore, because Wharton's argument essentially amounts to a contention that the district court should have weighed the § 3553(a) factors differently, it lacks merit.

IV.

For the foregoing reasons, we affirm the sentences imposed by the district court.